**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| T. MARZETTI COMPANY<br>380 Polaris Parkway<br>Westerville, OH 43082,<br><br>**Plaintiff,**<br><br>-vs-<br><br>PACIFIC CHOICE BRANDS<br>c/o Allan R. Andrews, Registered Agent and<br>Chief Executive Officer<br>4652 East Date Avenue<br>Fresno, CA 93725,<br><br>**Defendant.** | Case No. 2:25-CV-438<br><br>Judge_____<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff T. Marzetti Company ("Marzetti" or "Plaintiff"), by and through counsel, files this Complaint against Pacific Choice Brands ("PCB" or "Defendant") and states as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Defendant for breach of contract in connection with the Master Purchase Agreement, effective October 19, 2017 (the "2017 Agreement"), entered into by the Plaintiff and Defendant (collectively, the "Parties") and attached hereto as **Exhibit A**.

2. Pursuant to the 2017 Agreement, Defendant agreed to supply Plaintiff with Crushed Garlic puree which is to be cleaned, peeled, crushed, acidified, and pasteurized (the "Garlic"), consisting of quality pH and anaerobic organism levels, among other things.

3. Pursuant to Plaintiff's Purchase Orders, Defendant delivered the Garlic to Plaintiff between July 17-21, 2023.

4. On or around May 16, 2024, while the Garlic was still undisputedly within its two-year shelf life, Plaintiff discovered that some of the drums holding the Garlic were bloated.

5. As Defendant refused to pick up the defective drums of bloated Garlic or reimburse Plaintiff for the bloated Garlic, Plaintiff now seeks compensatory damages in the amount of $450,000.00, attorneys' fees, costs, prejudgment interest, punitive damages, and such other relief this Court deems just and proper.

## THE PARTIES

6. Plaintiff is an Ohio corporation maintaining its principal place of business at 380 Polaris Parkway, Westerville, Ohio 43082.

7. Defendant is a corporation incorporated in California maintaining its principal place of business at 4652 East Date Avenue, Fresno, California 93725.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy is greater than $75,000.00.

9. The Court has personal jurisdiction over Defendant pursuant to Paragraph 15(g) of the 2017 Agreement. *See* Ex. A.

10. Venue is proper in this jurisdiction pursuant to Paragraph 15(g) of the 2017 Agreement. *See* Ex. A.

## THE FACTS

11. Plaintiff is a specialty food brand that produces numerous salad dressings, fruit and vegetable dips, and frozen baked goods, among other products.

12. Defendant makes and supplies specialty food items to purchasers, including, but not limited to, Crushed Garlic puree.

13. In or around 2017, Plaintiff enlisted Defendant to supply Plaintiff with Garlic for use in several of Plaintiff's products, from dips to dressings.

14. As a result of the relationship, Defendant agreed to provide Garlic with satisfying quality pH and anaerobic organism levels, in accordance with 21 C.F.R. § 184.1317, 21 C.F.R. § 172.5 and FDA Section 402(a)(6) of the Act [21 U.S.C. § 342(a)(6)] Adulterated Food (collectively, the "Federal Regulations").

15. On or around May 16, 2024, while the Garlic was still undisputedly within its two-year shelf life, Marzetti discovered that some of the drums holding the Garlic were bloated.

16. On or around May 17, 2024, Plaintiff sent a corrective action report ("CAR") to Defendant informing them of the nonconforming Garlic.

17. On or around May 24, 2024, after Defendant failed to respond to the CAR, Plaintiff sent an additional request to Defendant to allow a return of the nonconforming Garlic and receive an account credit, pursuant to Paragraph 7(a) of the 2017 Agreement.

18. Defendant then requested a sample drum from each lot to perform a visual evaluation and send samples from each for micro testing to determine the root cause of the bloating.

19. Additionally, while PCB hypothesized that the issue was due to overfilling or temperature variation, it provided no documentation to support this contention, nor did it provide further information addressing the root cause.

20. On or around June 4, 2024, Defendant sent Plaintiff photos of the bloated drums of Garlic and a list of volume by lot.[1]

21. On or around June 5, 2024, Defendant again asked for one bloated drum from each lot and inquired into how many drums were bloating from each lot. PCB further reiterated its hypothesized reasoning for the bloating, while providing no definitive evidence.

---

[1] The following lots and their corresponding volume are at issue in this litigation: CG2352 - 16,960 lbs.; CG2422 - 30,173 lbs.; CG2562 - 26,300.6 lbs.; CG2632 - 32,868 lbs.

22. In response, Plaintiff informed Defendant of its desire for Defendant to pick up the nonconforming Garlic and asked when transportation would be able to do so.

23. The following week, on or around June 11, 2024, Defendant confirmed that it would pick up the drums from each lot from Marzetti's facility and requested additional information for the pickup.

24. On or around June 20, 2024, Plaintiff renewed its request for Defendant to pick up the nonconforming Garlic, totaling 64,128.11 lbs., by the end of the following week to align with the end of Plaintiff's fiscal year.

25. On or around June 25, 2024, and again on or around July 17, 2024, Defendant stated that it needed to evaluate one drum from each lot to determine this issue with the Garlic, sharing its hypothesis for the bloating twice more.

26. On or around July 18, 2024, after the requested pickup date had passed, Plaintiff made a second request that Defendant pickup all of the lots of Garlic from the Plaintiff's facility, having determined none of the Garlic was usable, and therefore nonconforming, due to the bloating.

27. On or around July 19, 2024, the following day, Plaintiff stated the urgency needed of the pickup, advising Defendant that the Garlic remaining in the facility presented a safety concern.

28. In response, PCB stated that it would escalate the pickup of the Garlic, noting, however, that Marzetti should not see increased bloating of the Garlic drums over time.

29. On or around July 24, 2024, after months of dialogue, Defendant picked up one drum from each lot to complete visual evaluation and micro testing.

30. On or around August 6, 2024, after completing its visual evaluation and micro testing, Defendant informed Plaintiff that it was not able to determine the root cause of the Garlic drum bloating, concluding that the appearance, odor, and micro results of the Garlic were all acceptable.

31. Instead, Defendant determined, without evidence, that the "unusual appearance may have been caused by momentary temperature fluctuations during filling, or movement/shifting of the bag during the filling operation."

32. Additionally, Defendant determined, based on the test results, that the return claim of the Garlic was not justified.

33. On or around August 13, 2024, in response to Defendant's failure to accept return of the Garlic, Marzetti expressed concerns with the usage of the product since a root cause of the Garlic drum bloating could not be determined. Further, the Garlic could potentially have unknown pathogen contamination.

34. On or around August 29, 2024, after a call with Defendant's leadership on or around August 23, 2024, Plaintiff sent a Notice Letter to Defendant renewing the request for pickup of the Garlic and requesting full reimbursement.

35. On or around October 14, 2024, Defendant sent Plaintiff a letter informing Plaintiff of additional testing results of the Garlic analyzed by Silliker Inc. The letter outlined the test results for microorganisms as being "below limits of detection." Additionally, the results did not provide a clear explanation of the Garlic drum bloating.

36. In response, on or around October 21, 2024, Plaintiff shared that while its own testing of the Garlic was mostly consistent with Defendant's, the Certificate of Analysis failed to include testing for anaerobic spore-formers.

37. Additionally, Plaintiff shared its results from testing conducted by TMZ Innovation Center Microbiology. The Garlic's pH level was within range linked to spoilage, further contributing to Marzetti's belief that the Garlic was unsafe for inclusion in its food products.

38. On or around November 27, 2024, after four requests from Plaintiff for a call to follow up on its findings, Defendant maintained its position that it would not issue a full credit reimbursement of the Garlic.

39. Defendant materially breached Section 6 of the 2017 Agreement, which states, in relevant part, "[Defendant] represents and warrants to [Plaintiff] that the [Garlic] strictly compl[ies] with the [s]pecifications; are merchantable, of new material, of good quality and workmanship, and free from defects; and are not adulterated or misbranded."

40. As a response, by letter dated December 10, 2024, Plaintiff's Assistant General Counsel issued to Defendant a letter demanding Defendant reimburse Plaintiff in the amount of $237,052.26 for the amounts paid by Plaintiff for the Garlic (the "Demand Letter").

41. After the deadline had elapsed, Plaintiff again contacted Defendant on or around January 24, 2025, to determine the status of its request. Despite two of Defendant's employees confirming receipt of the correspondence via email, Plaintiff has yet to receive a response.

42. As of the filing of this Complaint, the principal balance due and owing by Defendant to Plaintiff totals $237,052.26 and Defendant has failed and refused to pay the same.

## CLAIM I
## BREACH OF CONTRACT

43. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

44. Plaintiff entered into a valid contract with Defendant whereby Defendant agreed to sell to Plaintiff a contracted for volume of Garlic at a scheduled price, according to the terms of the Invoices.

45. Defendant agreed to sell Plaintiff Garlic of a certain quality, including but not limited to, conforming to pH and anaerobic organism levels under the 2017 Agreement.

46. Defendant failed to fulfill its obligations under the 2017 Agreement, to wit: "[Defendant] represents and warrants to [Plaintiff] that the [Garlic] strictly compl[ies] with the [s]pecifications; are merchantable, of new material, of good quality and workmanship, and free from defects; are not adulterated or misbranded with the meaning of any applicable food-related Law, including without limitation the Federal Food, Drug, and Cosmetic Act of 1938 ("FFDCA"), as amended and the US Federal Fair Packaging and Labeling Act of 1966, as amended [.]" *See* Ex. A at ¶ 6(a)(i)-(iii).

47. Defendant breached the 2017 Agreement by selling to Plaintiff Garlic with quality issues, including, but not limited to, specified nonconforming to pH and anaerobic organism levels. *See id.*

48. Plaintiff fully complied with its obligations and duties under the contract and fulfilled all conditions precedent thereto.

49. Plaintiff has demanded payment on Defendant, but Defendant has failed and/or refused to fulfill its obligations under the contract.

50. As a result of Defendant's breaches, Plaintiff has been damaged in an amount of $450,000.00.

51. Plaintiff is also entitled to an attorneys' fees, costs, prejudgment interest, punitive damages, and any such other relief this Court deems just and properly associated with Defendant's breaches.

## CLAIM II
## COMMON LAW FRAUD

52. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

53. Defendant falsely misrepresented to Plaintiff that the Garlic strictly complied with the Plaintiff's specifications and was "merchantable, of new material, of good quality and workmanship, and free from defects; and are not adulterated or misbranded" as outlined above and required under the Purchase Orders and the 2017 Agreement. *See* Ex. A.

54. Defendant's false representations regarding the Garlic, as outlined above and alleged in this Complaint, were material to the business transactions between Plaintiff and Defendant.

55. Defendant knew of the falsity of the representations regarding the quality of the Garlic, and Defendant disregarded the truthfulness of these representations.

56. Defendant became aware that it had sold Plaintiff Garlic that did not meet the requirements or specifications under the Purchase Orders and the 2017 Agreement.

57. As a result of Defendant's fraud, Plaintiff has been damaged in an amount of $450,000.00.

58. Plaintiff is also entitled to an award of attorneys' fees, costs, prejudgment interest, punitive damages, and any such other relief this Court deems just and properly associated with Defendant's willful engagement in fraud.

## CLAIM III
## COMMON LAW NEGLIGENT MISREPRESENTATION

59. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

60. In the course of Defendant's business and in its sale of the Garlic to Plaintiff, in which Defendant has a pecuniary interest, Defendant supplied false information to Plaintiff.

61. Defendant failed to exercise reasonable care or competence in obtaining or communicating the quality of the Garlic to Plaintiff as set forth above which includes, without limitation, providing inaccurate and incomplete information about the Garlic's quality.

62. The information proximately caused pecuniary loss to Plaintiff, who justifiably relied on the inaccurate information provided by Defendant.

63. As a result of Defendant's false information and negligent misrepresentation, Plaintiff has been damaged in an amount of $450,000.00.

64. Plaintiff is also entitled to an award of attorneys' fees, costs, prejudgment interest, punitive damages, and any such other relief this Court deems just and properly associated with Defendant's willful negligent misrepresentation.

## CLAIM IV
## DECEPTIVE TRADE PRACTICES UNDER OHIO REVISED CODE 4165 *et seq.*

65. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

66. Defendant engaged in deceptive trade practices in the course of business and transactions with Plaintiff by causing a likelihood of misunderstanding as to the usability of the Garlic. and by representing that the Garlic was of a particular quality that it did not have.

67. As a result of Defendant's deceptive trade practices, Plaintiff has been damaged in an amount of $450,000.00.

68. Plaintiff is also entitled to an award of attorneys' fees, costs, prejudgment interest, punitive damages, and any other relief this Court deems just and properly associated with Defendant's willful engagement in deceptive trade practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in its favor on all Counts and prays for an award of damages against Defendant, including, at a minimum, the following relief:

1. Compensatory damages compensatory in the amount of $450,000.00;
2. Punitive damages;
3. Attorneys' fees and costs;

4. Prejudgment interest at the maximum legal rate; and

5. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Catherine L. Strauss*
Catherine L. Strauss (0072980) - Trial Attorney
Sara K. Sams (100065)
**ICE MILLER LLP**
250 West Street, Suite 700
Columbus, Ohio 43215
T: 614.462.2700
F: 614.462.5135
Catherine.Strauss@icemiller.com
Sara.Sams@icemiller.com
*Counsel for Plaintiff T. Marzetti Company*

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury to the extent authorized by law.

*/s/ Catherine L. Strauss*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of April, 2025, a true and correct copy of the foregoing was electronically mailed to Plaintiffs' attorneys at addresses listed below.

**PACIFIC CHOICE BRANDS**
c/o Allan R. Andrews
Registered Agent and Chief Executive Officer
4652 East Date Avenue
Fresno, CA 93725

/s/ Catherine L. Strauss