UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

T. MARZETTI COMPANY,

          **Plaintiff,**

    v.

**PACIFIC CHOICE BRANDS,**

          **Defendant.**

:

    Case No. 2:25-cv-438
    Chief Judge Sarah D. Morrison
    Magistrate Judge Chelsey M.
    Vascura

:

## OPINION AND ORDER

Pacific Choice Brands ("PCB") moves to compel the arbitration of the claims asserted against it by T. Marzetti Company and to stay this case pending completion of such arbitration proceedings. (ECF No. 20.) The motion is fully briefed and ripe for consideration. (*See* ECF Nos. 21, 22.)

For the reasons below, PCB's motion is **GRANTED**.

## I.    BACKGROUND[1]

T. Marzetti is a specialty food company that produces salad dressings, fruit and vegetable dips, and frozen baked goods, among other products. (Compl. ¶ 11, ECF No. 1.) PCB makes and supplies specialty food items to various purchasers. (*Id.* ¶ 12.) This case arises from PCB's agreement to supply T. Marzetti with crushed garlic puree for use in T. Marzetti's products. (*Id.* ¶ 2.)

---

[1] The Court accepts T. Marzetti's factual allegations for purposes of this motion. *See Wamer v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022).

In October 2017, the parties entered into a Master Purchase Agreement ("MPA"), pursuant to which PCB was to provide T. Marzetti with garlic puree that had quality pH and anaerobic organism levels in accordance with federal regulations. (Compl. ¶¶ 1, 13–14, ECF No. 1; *see also* MPA, ECF No. 1-1.) Relevant to the instant motion, Section 15(h) of the MPA contains an arbitration provision, which provides:

> <u>Alternative Dispute Resolution</u>. Any dispute arising out of or relating to this Agreement, including the breach, termination or validity thereof, shall be formally resolved by arbitration in accordance with the CPR Institute for Dispute Resolution Rules for Non-Administered Arbitration in effect on the date of this Agreement, by a sole arbitrator appointed under the procedure provided in CPR Rule 5.3; except that the arbitrator shall have no power to award non-monetary or equitable relief of any sort except as provided in CPR Rule 13 (Interim Measures of Protection). The place of arbitration shall be Columbus, Ohio.

(MPA, ECF No. 1-1, PAGEID # 18.) Additionally, Section 15(b) of the MPA states that the parties' "submission to arbitration" survives "completion, expiration, cancellation, or termination" of the MPA. (*Id.*)

T. Marzetti obtained garlic puree from PCB under the MPA in July 2023. (Compl. ¶ 3, ECF No. 1.) In May 2024—within the garlic puree's two-year shelf life—T. Marzetti discovered that some of the drums containing garlic puree were bloated. (*Id.* ¶ 4.) T. Marzetti notified PCB of the nonconformity and asked to return the garlic puree in exchange for an account credit. (*Id.* ¶¶ 16–17.) The parties communicated back and forth until August 2024, when PCB determined that T. Marzetti's request to return the garlic puree was not justified. (*Id.* ¶ 32.) T. Marzetti disagreed with PCB's assessment and renewed its return request four times

between August and November 2024. (*Id.* ¶ 38.) PCB refused to take back the garlic puree or issue a full reimbursement. (*Id.*)

## II.    PROCEDURAL HISTORY

T. Marzetti filed this case in April 2025, alleging claims for breach of the MPA (Count I), fraud (Count II), negligent misrepresentation (Count III), and deceptive trade practices under Ohio law (Count IV). (Compl., ECF No. 1.) When PCB failed to respond to the Complaint, T. Marzetti obtained an entry of default against PCB under Federal Rule of Civil Procedure 55(a). (ECF No. 11.)

The Court subsequently set aside that entry of default upon the parties' joint motion (ECF No. 14), and PCB filed an Answer in September 2025 (ECF No. 15). Therein, PCB asserted its right to arbitration as its third affirmative defense. (ECF No. 15, PAGEID # 60.) PCB then submitted the instant motion to compel arbitration of the parties' dispute and stay this case pending such arbitration proceedings. (ECF No. 20.)

## III.    STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") is "a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (citation modified). The FAA "reflects the basic principles that arbitration is a matter of contract and that contracts must be enforced according to their terms." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020) (internal quotations and citation omitted). Under the FAA, an arbitration

clause "shall be valid, irrevocable, and enforceable, save upon grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

A party may petition a court to order that a dispute proceed in arbitration in accordance with an arbitration agreement. *See* 9 U.S.C. § 4. When presented with a motion to compel arbitration, courts consider: (1) whether a valid agreement to arbitrate exists; (2) whether the dispute falls within the scope of that agreement; (3) whether any federal statutory claims are asserted that Congress intended to be non-arbitrable; and (4) if some but not all claims are arbitrable, whether to stay proceedings. *Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005) (citation omitted). Courts construe "all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Bradford v. Team Pizza, Inc.*, 349 F.R.D. 313, 317 (S.D. Ohio 2025) (Barrett, J.). "[A]ny doubts regarding arbitrability should be resolved in favor of arbitration." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

## IV.    ANALYSIS

PCB argues that T. Marzetti must submit its claims to binding arbitration in accordance with the MPA, which is a valid arbitration agreement between the parties that encompasses all of T. Marzetti's claims. (ECF No. 20, PAGEID # 80–81.) In response, T. Marzetti does not dispute PCB's arguments about the arbitration agreement's validity or scope but rather posits that PCB waived its right to arbitration by waiting eight months after the start of this case to seek arbitration

and by actively engaging in this case throughout that time. (ECF No. 21, PAGEID # 103–05.)

Initially, the Court agrees that Section 15(h) of the MPA is a valid arbitration provision in which the parties unambiguously agreed to arbitrate "[a]ny dispute arising out of or relating to [the MPA], including the breach, termination or validity thereof." (MPA, ECF No. 1-1, PAGEID # 18.) And the arbitration agreement's broad language—specifically, its inclusion of the phrase "*[a]ny dispute*"—confirms that it encompasses all of T. Marzetti's claims, which each stem from PCB's agreement to provide the garlic puree.[2] (*Id.* (emphasis added)); *see, e.g.*, *RECO Equip., Inc. v. Wilson*, No. 2:20-CV-3556, 2021 WL 1721047, at *5 (S.D. Ohio Apr. 30, 2021)

---

[2] "[W]hether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" are considered "gateway questions [of] arbitrability." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). Usually, courts decide such gateway questions of arbitrability. *See, e.g.*, *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) ("When asked by a party to compel arbitration … a federal court must determine whether the parties agreed to arbitrate the dispute at issue.") (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626 (1985)). The FAA, however, permits parties to agree that an arbitrator, rather than a court, should decide these questions. *Rent-A-Ctr.*, 561 U.S. at 68. This agreement is called a "delegation provision." *Id.* If a valid delegation provision exists, "a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).

Here, the parties do not reference or discuss any delegation provision in the MPA. But Section 15(h) arguably contains an enforceable delegation provision because that section incorporates the CPR Institute for Dispute Resolution Rules for Non-Administered Arbitration, which sufficiently evidences the parties' intent to delegate gateway questions to an arbitrator. (MPA, ECF No. 1-1, PAGEID # 18); *see, e.g.*, *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 583 (6th Cir. 2021) ("The incorporation of these [AAA] rules provides clear and unmistakable evidence that the parties agreed to arbitrate gateway arbitrability questions."). Although the Court declines to affirmatively find the existence of a valid delegation provision in the MPA, this further supports the propriety of arbitration in this case.

5

(Deavers, M.J.) ("[T]orts can be covered by arbitration clauses if the allegations underlying the claims relate to matters falling within the agreement.") (citing *Fazio v. Lehman Bros.*, 340 F.3d 386, 395 (6th Cir. 2003)). Lastly, T. Marzetti has not asserted any federal statutory claims. Thus, and given T. Marzetti's lack of argument to the contrary, PCB has met the first three *Glazer* considerations.

But the inquiry does not end there. T. Marzetti insists that PCB waived its right to arbitrate by delaying its request to compel arbitration and engaging in the litigation for the past eight months. (ECF No. 21, PAGEID # 102.) According to T. Marzetti, PCB's arbitration demand is "yet another delay tactic." (*Id.*)

"[B]ecause of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred." *Glazer*, 394 F.3d at 450. Until recently, federal courts, including those in the Sixth Circuit, held that a party waives its agreement to arbitrate when it "(1) tak[es] actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delay[s] its assertion to such an extent that the opposing party incurs actual prejudice." *Hurley v. Deutsche Bank Tr. Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010), *abrogation recognized by Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 974 (6th Cir. 2024). However, the Supreme Court abrogated the prejudice prong of the analysis in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). So, post-*Morgan* courts asking whether a party has waived a right to arbitrate "should not make harm to others a prerequisite. Instead, they should apply ordinary waiver rules, looking for the

6

intentional relinquishment or abandonment of a known right." *Schwebke*, 96 F.4th at 974 (quoting *Morgan*, 596 U.S. at 417).

"The court, not the arbitrator, presumptively evaluates whether a defendant should be barred from seeking a referral to arbitration because it has acted inconsistently with reliance on an arbitration agreement." *Bradford*, 349 F.R.D. at 317 (internal quotations and citation omitted). Courts should "consider a number of factors," including "when and how the party raised the arbitration issue, the overall progress of the case (and discovery) when they filed the motion to compel, and whether the party made other affirmative request[s] for relief before moving to compel arbitration." *Id.* (internal quotations and citation omitted); *see also Kloosterman v. Metro. Hosp.*, 153 F.4th 501, 506 (6th Cir. 2025) ("If a defendant litigates in court for a long enough time before seeking arbitration, one would naturally say that the defendant has not lived up to the 'promise' to arbitrate."). Ultimately, "the waiver analysis rests on the totality of the circumstances." *Schwebke*, 96 F.4th at 976.

In this case, PCB did not intentionally abandon its right to arbitration by acting inconsistently therewith. First, PCB explicitly preserved its right to arbitrate in its Answer. In so doing, PCB used its "main opportunity" to invoke its right to arbitrate, demonstrating its intent. *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 718 (6th Cir. 2012) ("The filing of an answer is, after all, the main opportunity for a defendant to give notice of potentially dispositive issues to the plaintiff; and the intent to invoke an arbitration provision is just such an issue.").

PCB further flagged the issue in the parties' Rule 26(f) Report. The parties were given until December 15, 2025, to file a motion on that issue, and PCB did so. At no point did PCB obfuscate the possibility that it would seek to arbitrate T. Marzetti's claims or otherwise relinquish its right to do so.

Additionally, PCB has not participated in substantial litigation proceedings, as this case is still in the early stages. Although the parties are conducting discovery, they have not, for example, taken depositions, filed dispositive motions, or requested substantive rulings from the Court (excluding the instant motion). *Cf. Schwebke*, 96 F.4th at 977 (finding waiver where defendant "participated in extensive discovery" that involved producing tens of thousands of pages of documents, taking and defending depositions, and issuing third-party subpoenas). Nor is this an instance where PCB sought "an immediate and total victory" through a motion to dismiss and then moved to arbitrate only after the Court rejected its initial attempt to end the dispute. *Kloosterman*, 153 F.4th at 508.

T. Marzetti's contrary arguments fail to persuade. To the extent T. Marzetti argues that it was prejudiced because of PCB's conduct (*see* ECF No. 21, PAGEID # 105), such an argument is no longer relevant after the Supreme Court's decision in *Morgan*. Nor is there anything "inherently unfair … about being required to participate in arbitration, especially where one has contractually agreed to resolve disputes via arbitration." *Pritchard v. Dent Wizard Int'l Corp.*, 275 F. Supp. 2d 903, 919 (S.D. Ohio 2003) (Marbley, J.).

Looking to T. Marzetti's other contentions, T. Marzetti asserts that PCB's conduct of waiting eight months to seek arbitration amounts to waiver. (ECF No. 21, PAGEID # 104.) Although courts may consider "the length of delay in invoking an arbitration right and seeking a stay," *see, e.g.*, *Systran Fin. Servs. Corp. v. Giant Cement Holding, Inc.*, 252 F. Supp. 2d 500, 506 (N.D. Ohio 2003), no one factor is dispositive in the waiver analysis, and what is more significant is what occurred in the case during the period of "delay." As explained above, this case is not far along procedurally. And insofar as T. Marzetti takes issue with the delay of PCB's Answer raising the arbitration defense, T. Marzetti agreed to set aside PCB's default and allow PCB several additional weeks to respond to the Complaint, expressly acknowledging that "[s]etting aside the entry of default will not prejudice [T. Marzetti]." (ECF No. 12, PAGEID # 48.)

T. Marzetti has failed to establish that PCB waived or acted inconsistently with its arbitration rights. Without a finding of waiver, all of T. Marzetti's claims are subject to arbitration pursuant to Section 15(h) of the MPA, and, under the fourth *Glazer* consideration, the Court finds that a stay of this case pending completion of the arbitration proceedings is warranted. *See Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) ("When § 3 says that a court 'shall ... stay' the proceeding, the court must do so."); *see also Kloosterman*, 153 F.4th at 505 ("[C]ourts have long allowed defendants in a pending federal case not just to stay the case under § 3, but also to move to compel arbitration under § 4.").

## V.     CONCLUSION

"[T]e party seeking to prove waiver [of the right to arbitrate] bears a heavy burden of proof." *Linglong Americas, Inc. v. Tire*, No. 1:15-CV-1240, 2016 WL 2610264, at *2 (N.D. Ohio May 6, 2016), *aff'd sub nom.* 666 F. App'x 445 (6th Cir. 2016). In this case, T. Marzetti has not shouldered its burden.

Accordingly, PCB's motion to compel arbitration and stay this case (ECF No. 20) is **GRANTED**. This case is **STAYED** pending the outcome of arbitration. The parties are **ORDERED** to file a joint status report apprising the Court of the status of arbitration every six (6) months or upon the conclusion of the arbitration proceedings, whichever is earlier.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**